OPINION
Avery McWilliams is appealing the judgment of the Greene County Common Pleas Court, finding him guilty of burglary and sentencing him to six years of incarceration.
Glenna Stallard and Mr. McWilliams had dated for a period of three years and had a two year old child together. Ms. Stallard had broken off the relationship and asked Mr. McWilliams not to come to her home. On November 25, 1999, Mr. McWilliams came to Ms. Stallard's door knocking and asking her to let him enter. Even after Ms. Stallard refused to open the door, Mr. McWilliams continued knocking on the door and shouting. Mr. McWilliams then left and went to a pay phone where he called Ms. Stallard and they argued about her refusal to let him enter her home. Five minutes after the phone call ended, Ms. Stallard heard glass shattering and found Mr. McWilliams coming through a window of her apartment which he had broken. Ms. Stallard immediately called 911 for the police, but by the time the police arrived, Mr. McWilliams was gone. As a result of this incident, Ms. Stallard filed charges against Mr. McWilliams.
The following night Ms. Stallard was afraid to be alone so she asked a friend and the friend's boyfriend to stay the night with her. Ms. Stallard testified that before she went to bed she locked all the doors, including the back patio door. However, Ms. Stallard awoke in the middle of the night to find Mr. McWilliams in her bedroom. Mr. McWilliams admitted that he had come in through the back patio door, claiming it was unlocked. Mr. McWilliams had on a coat that Ms. Stallard did not recognize and he kept his hands shoved in his pockets the entire time he was in her bedroom. Mr. McWilliams repeatedly told Ms. Stallard to drop the charges she had filed against him the previous night. Ms. Stallard testified that she was very frightened by this incident. Ms. Stallard was finally able to convince Mr. McWilliams to leave after promising not to call the police. As soon as Mr. McWilliams left, Ms. Stallard called 911 and woke her friends, who had slept through the incident. The police testified that Ms. Stallard appeared very scared and upset. Ms. Stallard then worked with the police to apprehend Mr. McWilliams by arranging for him to come to her apartment the next day and then for her to signal to the police to come by a telephone coded signal.
Mr. McWilliams testified at trial and denied ever threatening Ms. Stallard. However, Mr. McWilliams did admit that he was aware that he was not welcome at Ms. Stallard's home the nights of the incidents nor was he invited. Further, Mr. McWilliams claimed that the back patio door had been unlocked and he pushed it open. Also, Mr. McWilliams admitted that when he snuck in Ms. Stallard's room that night that he asked her to drop the charges.
On December 12, 1999, the Grand Jury of Greene County indicted Mr. McWilliams on one count of burglary, a second degree felony. Mr. McWilliams pled not guilty and on March 15, 2000, a jury trial began on the matter. On March 16, 2000, the jury found Mr. McWilliams guilty of the offense of burglary. On May 2, 2000, Mr. McWilliams was sentenced to six years of incarceration. Mr. McWilliams has filed this delayed appeal with our permission.
Mr. McWilliams raises the following as his sole assignment of error:
 A REVIEWING COURT WILL REVERSE A VERDICT WHERE THERE IS NOT SUBSTANTIAL EVIDENCE UPON WHICH THE TRIER OF FACT COULD REASONABLY CONCLUDE THAT ALL THE ELEMENTS OF AN OFFENSE HAVE BEEN PROVEN BEYOND A REASONABLE DOUBT.
Mr. McWilliams argues that he did not enter the apartment by use of force, that he did not have the intent to commit a criminal offense while in the apartment, and did not intimidate Ms. Stallard and therefore cannot be convicted of burglary. We disagree.
The Ohio Supreme Court reiterated the standard of review for a manifest weight of the evidence challenge in State v. Thompkins, stating:
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's, supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
78 Ohio St.3d 380, 387, reconsideration denied (1997), 79 Ohio St.3d 1451.
R.C. 2911.12 provides
 (A) No person, by force, stealth, or deception, shall do any of the following:
 (1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense; * * *
(C) Whoever violates this section is guilty of burglary.
The criminal offense Mr. McWilliams is accused of intending to commit under the burglary statute is intimidation of a crime victim, which is prohibited by R.C. 2921.04(A). The statute provides:
 (A) No person shall knowingly attempt to intimidate or hinder the victim of a crime in the filing or prosecution of criminal charges or a witness involved in a criminal action or proceeding in the discharge of the duties of the witness.
R.C. 2921.04(A).
Mr. McWilliams claims that he could not be found guilty of burglary under R.C. 2911.12 because he did not enter Ms. Stallard's home "by force, stealth, or deception", he did not intend to commit a criminal offense, and he did not attempt to intimidate Ms. Stallard into dropping the charges against him.
Initially, Mr. McWilliams claims that he did not enter the home by stealth, force or deception. In Ohio, opening a closed but unlocked door amounts to sufficient force to prove the element of force in the offense of Burglary or Breaking and Entering. State v. Lane (1976),50 Ohio App.2d 41, 4 O.O.3d 24; State v. Russell (July 2, 1994), Montgomery App. No. 14002, unreported; State v. Scott (Aug. 12, 1992) Meigs App. No. 457, unreported. Mr. McWilliams argues that the State of Ohio (hereinafter "State") did not produce any evidence that Mr. McWilliams entered the apartment by force. However, Ms. Stallard testified that Mr. McWilliams admitted coming in through the back patio door and that she had locked that door prior to going to sleep. (Tr. 20). Moreover, Mr. McWilliams admitted that he entered Ms. Stallard's apartment that night uninvited by opening the back patio door, which he claimed was unlocked. (Tr. 59-60). Regardless of whether the back patio door was locked or unlocked, the effort Mr. McWilliams used to open the door, pursuant to Lane, Russell, and Scott, is sufficient effort to constitute force under the burglary statute. Therefore, the finding of the jury that Mr. McWilliams entered Ms. Stallard's home through the use of force was not against the manifest weight of the evidence.
Additionally, Mr. McWilliams argues that he did not have the requisite intent to commit a criminal offense when he entered Ms. Stallard's home. The required mental state for the crime of intimidation is "knowingly," which is defined in R.C. 2901.22(B) as follows: "a person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Mr. McWilliams entered Ms. Stallard's home and bedroom uninvited and then proceeded to stand in front of her with his hands shoved in his pockets and ask her to drop the charges against him. Mr. McWilliams testified at trial that he did not intend to frighten or intimidate her. (Tr. 54). Although Mr. McWilliams was quiet and did not awaken Ms. Stallard's guests, this does not necessarily mean that he did not intend to intimidate Ms. Stallard into dropping the charges she had filed against him the previous night. (Tr. 22). Mr. McWilliams admits in his brief that a normal reaction to waking up in the middle of the night and finding someone in your bedroom is fear. (Defendant/Appellant's brief p. 8). Further, the police officers and Ms. Stallard testified that she was upset and put in fear by Mr. McWilliams's actions. (Tr. 20, 32, 41). We cannot say that the trial court lost its way and engaged in a manifest miscarriage of justice in determining that Mr. McWilliams was aware that entering Ms. Stallard's home at night when he was aware she did not want him in her home, going into her bedroom with his hands shoved in his pockets, and asking her to drop the charges she filed, would probably cause her fear. The jury's determination that Mr. McWilliams entered Ms. Stallard's apartment with the intent of intimidating Ms. Stallard was not against the manifest weight of the evidence.
Finally, Mr. McWilliams argues that the trial court's determination that he attempted to intimidate Ms. Stallard was against the manifest weight of the evidence. Mr. McWilliams argues that since he did not have the requisite intent to commit the offense of intimidation then he could not have committed the offense. However, we stated above that the trial court's determination that Mr. McWilliams had the specific intent to commit the offense of intimidation was not against the manifest weight of the evidence. Therefore, the trial court's determination that Mr. McWilliams committed the offense of attempting to intimidate Ms. Stallard was not against the manifest weight of the evidence.
The judgment of the trial court is affirmed.
WOLFF, P.J. and GRADY, J., concur.